McTIGHE v. KEYSTONE COAL CO., Limited, et al.

(Circuit Court of Appeals, Third Circuit. January 23, 1900.)

No. 20.

1. MORTGAGE—CONSTRUCTION—FORECLOSURE—APPLICATION OF PROCEEDS.

A mortgage to secure bonds and interest thereon discloses no intention that, in case of sale under general foreclosure proceedings, the interest shall be paid before the principal from the proceeds, there being no provision as to distribution thereof, though there is a provision that, in case of default in interest continuing for six months, the trustee may take possession of the property, and collect the rents and profits, and, after paying the expenses of managing it, apply the balance to payment of interest in the order in which the interest shall have become due, and turn the balance over to the mortgagor; and another provision that, in case of such a default in interest, the holders of a majority of the bonds can require the trustee to proceed to foreclose the mortgage by suing out a scire facias, and pursuing the same to judgment, with leave to take out execution for the amount of the interest, and, in case of any subsequent default, with leave to take out another execution for collection of the same.

2. SAME—PRIORITY IN DISTRIBUTION.

In case of sale of property by decree under general foreclosure proceedings for payment of the overdue debt evidenced by the bonds which the mortgage was given to secure, the interest is entitled to no priority in payment, in the absence of provision in the mortgage therefor, though the interest on the bonds held by certain persons had been paid up to the time of general default of interest, while that on the bonds of others had not been paid.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

D. T. Watson, for appellant.

C. C. Dickey and W. G. Guiler, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This is an appeal from the decree of the United States for the Western district of Pennsylvania dismissing exceptions filed by James M. Bailey to the report of the master

appointed to distribute a fund realized from the foreclosure of a mortgage of coal situate in Pennsylvania and West Virginia, given by the Keystone Coal Company, Limited, a limited partnership association under the laws of Pennsylvania, to secure its certain coupon bonds aggregating $275,000. The Keystone Coal Company, Limited, a joint-stock association, organized under the act of assembly of Pennsylvania approved June 2, 1874, and its several supplements, for the purpose of raising money wherewith to carry on its business of the mining, transportation, and sale of coal, sold and delivered 550 of its bonds, aggregating $275,000, dated April 1, 1879, payable April 1, 1887, bearing 6 per cent. interest, and having semiannual interest coupons attached. To secure these bonds the coal company executed a mortgage of its coal property, situate in Washington county, Pa., and Brooke county, W. Va., to the Safe-Deposit Company of the City of Pittsburg, as trustee for the bondholders. By its bonds the coal company promised to pay the principal debt on April 1, 1887, and to pay the interest semiannually on April 1st and October 1st in each year, "upon presentation and surrender of the annexed coupons as they severally fall and become due"; and it stipulated that, in the event of default in payment of any interest coupon for six months, the principal and interest might be made due and payable immediately in the manner provided by the mortgage. The mortgage provided, in effect, in article 1, that, in case default be made in the payment of any semiannual installment of interest, and the same remain unpaid for six months, or in case default be made for six months in the payment of any taxes, assessments, or other governmental charges on said premises, the lien whereof might or could be held prior to the lien of this mortgage, and in case default be made in the payment of the principal of said bonds, when due, then, in any and every such case of default, it should be lawful for the trustee for the time being, personally or by his attorneys or agents, to enter the said premises, and "to have, hold, possess, and enjoy, operating the said coal underlying said described premises, and to mine, take, and carry away the same," and to collect and receive all rents, revenues, incomes, issues, and profits of the said association, and from all coal mined out of and from said premises, and, after deducting therefrom the expenses of entering and managing said property, to apply the balance thereof, first, to the payment of all overdue interest on the said bonds, with interest thereon, in the order in which said interest shall have become due; and, second, to the payment of interest accruing after such default and entry by the trustee, and during its possession, without preference between bondholders; and, if any surplus remains after these payments, the same to be paid to the treasurer of said association. Article 2 of the mortgage provides for the issuing of a scire facias upon default in the payment of any semiannual interest which shall remain unpaid for six months after the same shall become due and be demanded, upon written demand by the bondholders, and for the prosecution of the same to judgment, with leave to take out execution for the amount of said interest, and, in case of any subsequent default, with leave to take

out another execution for the collection of the same. The Keystone Coal Company, Limited, paid in full to all, except a few, of the bondholders, the semiannual interest coupons which matured in 1879, 1880, 1881, and on April 1, 1882. James M. Bailey is one of the bondholders who did not receive payment for his coupons maturing prior to the general default in October, 1882. The reason was that there was not enough money in the treasury of the company at the various interest periods to pay all coupons, and some coupon holders were paid in full in preference to the appellant and a few others. Of these unpaid coupons maturing prior to October, 1882, the appellant owns an aggregate of $14,157. Some of these coupons were detached from their bonds, and were bought by the appellant from the original holders at various times, he paying full value therefor. The trustee under the mortgage never proceeded to foreclose the same. In 1897, McTighe, a citizen of New York, and a bondholder, filed his bill in the circuit court for the Western district of Pennsylvania, praying an account, a foreclosure of the mortgage, or sale, and a receiver. The court appointed the Safe-Deposit & Trust Company (the trustee named in the mortgage) receiver of the mortgaged property, and directed it to take possession thereof. By its final decree the court ordered the trust company, as receiver and trustee, under the terms of the mortgage, and also in pursuance of the order and decree of the court, to offer the mortgaged property at public sale, and sell the same. In its said decree the court made a finding of fact that only part of the interest coupons maturing prior to April 6, 1882, were paid by the mortgagor, some such remaining unpaid, and directed an account to be stated of the amount due on account of said bonds, and appointed W. R. Blair, Esq., master, to state such account, and to determine all disputes of the holders of the various bonds and coupons, and to determine the respective rights and priorities of each to share in the purchase money derived from the sale of the property and paid into the treasury of the court. $29,750 was realized from the sale of the mortgaged property. The master found the facts as to the payment of interest coupons and the amount and classes of coupons owned by Bailey as above stated. Bailey claimed, under the terms of the bond and mortgage, to be allowed, out of the fund realized, payment in full for the unpaid interest coupons maturing prior to October 1, 1882, as above stated, prior to the allowance of any dividend on the principal of said bonds, and also prior to other coupons maturing subsequent to the said date of general default in the payment of interest coupons. The master disallowed this claim, and reported a schedule of distribution, allowing all bond and coupon holders to recover a proportionate part of said fund, based upon the aggregate amount of bonds and interest coupons owned by each, respectively, without any priority or preference in respect of coupons which matured and were unpaid prior to the general default in the payment of interest, and which were owned by Bailey and others, belonging to the various classes of which the holders of part had been paid in full by the company. Bailey filed exceptions to the master's re-

port, alleging that the master erred in not allowing his claim to a preference in distribution. After argument, the court, per Buffington, J., dismissed these exceptions, and confirmed the pro rata distribution, and entered a final decree to that effect. Thereupon Bailey appealed, assigning the dismissal of his exceptions claiming such preference as error.

The contentions of the appellant, as gathered from his exceptions filed and his argument before this court, are: First, that the terms of the mortgage disclose an intention that the interest first due shall be first paid, and that this intention so disclosed requires that the unpaid coupons held by appellant maturing prior to October, 1882, should be paid before subsequently maturing coupons, and before the principal of the bonds; and, second, that the holders of interest coupons belonging to a class of which part had been paid in full, and which matured prior to the date of general default, are entitled, on general equitable principles, to be paid in full before the principal of the bonds, and subsequently maturing coupons are entitled to share in the distribution of the funds in the hands of the trustee. As to the first contention, we are of opinion, after a careful examination of the terms of the mortgage, that the only case in which an intention is disclosed that the interest first due shall be first paid is in the event of the entry and possession by the trustee, under the power given in the mortgage, to operate the property, where there is default in the payment of interest as provided for in the first article of the agreement between the mortgagor and the trustee, as set forth in the mortgage. It is plain, from a careful reading of this article, that it was the intention of the parties to make special provision for the payment of overdue interest, in order that the mines might be carried on as a going concern, and to that end, after operating expenses, etc., were paid, that the interest due should be paid out of the profits as a prudent administrator of his own property would pay it, to prevent litigation and interference with the orderly conduct of business. The only other reference to the payment or collection of interest contained in the mortgage is in the second article of the agreement referred to. It is therein provided that, in case of default of an installment of interest, a majority in value of the holders of the bonds can require the trustee to proceed to a foreclosure of the mortgage by suing out a scire facias, and pursuing the same to judgment, with leave to take out execution for the amount of interest due, etc. This special provision for the collection of interest is confined and limited by its terms to the special conditions therein mentioned. There is nowhere else any language of the mortgage from which an inference can be drawn that the security of the same was intended to specially prefer the payment of overdue interest to the payment of the principal, to which it was appurtenant. No provision is made as to how the proceeds of a sale under general foreclosure proceedings shall be distributed. That matter is left to be determined upon the general principles governing the sale of property under foreclosure proceedings. Nor do we think that on "general principles of equity" the holders of coupons maturing prior to October, 1882, are entitled to be paid in full,

because certain similar coupons were paid before the general default. The sale of the property made by decree of the court under general foreclosure proceedings was for the purpose of paying the overdue debt evidenced by the bonds which the mortgage was given to secure. The principal and the accrued interest represented the debt ·evidenced by each bond and its coupons, but, in the absence of any stipulation in the mortgage contract to that effect, there is no priority or preference due to the interest or the coupons representing them. The fact that certain coupons of the same class as those represented in this suit had been paid by the company prior to the general default of interest can give no superior equity to these unpaid coupons. Those holding the paid coupons had a right to receive the money, and in doing so infringed upon no right of the holders of the unpaid coupons. There was that much less debt due, and, in the case of a going and solvent concern, that was beneficial, and not detrimental, to the other creditors. The principle is the same as would obtain in case payment had been made to others of a part of the principal of their bonds, or if they had collected a part by execution against property of the Keystone Coal Company not included in the mortgage. In the case supposed, as in the case at bar, the proceeds are to be applied to the debt remaining unpaid, with its accrued interest. In the language of Ketchum v. Duncan, 96 U. S. 659, 24 L. Ed. 868:

"The coupons are mere representatives of the claim for interest. The obligation of the debtor, evinced by them, cannot be higher, nor entitled to greater privileges, than it would be had the bonds in their body undertaken the payment of interest."

We think this case (96 U. S. 659, 24 L. Ed. 868) is decisive of the question in this appeal. As this was the opinion of the master appointed by the court below, and as the exception to his report in this respect was overruled by the said court, the decree of the court below in the premises is affirmed.